# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6675 | **DATE** | 5/30/2001 |
| **CASE TITLE** | NORA BONILLA vs. SMALL ASSEMBLIES CO. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: we find Bonilla's FMLA claim is properly before this Court. However, there are factual issues in dispute that prevent us from entering judgment in her favor. As a result, the parties' cross motions for summary judgment are denied. Status hearing set for 6/14/01 at 9:30a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 31 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | ED-7 | | 37 |
| | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 MAY 30 PM 1:43 | | |
| TBK | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NORA BONILLA, )
)
      **Plaintiff,** )
)
v. ) No. 99 C 6675
) Paul E. Plunkett, Senior Judge
SMALL ASSEMBLIES COMPANY, )
)
      **Defendant.** )

## MEMORANDUM OPINION AND ORDER

Nora Bonilla (Bonilla) has filed a one count complaint against Small Assemblies Company (Small) for terminating her employment in violation of the Family Medical Leave Act of 1993, 29 U.S.C. §§ 2601 et seq. (FMLA). The parties have filed cross motions for summary judgment pursuant to Federal Rule of Civil Procedure (Rule) 56. For the reasons provided in this Memorandum Opinion and Order, both motions are denied.

DOCKETED
MAY 3 1 2001

### Facts[1]

Bonilla was employed by Small as a machine operator from 1991 until January of 1998. (Bonilla's 56.1(a)(3) Stmt. ¶ 5.) On December 22, 1997, Bonilla left for an approved two-week vacation (December 22, 1997 to January 5, 1998) to visit her family in Honduras. (Id. at ¶ 6; Small's 56.1(a)(3) Stmt. ¶ 3.) During the vacation, Bonilla's mother became ill. (Id. at ¶ 7.) On December

---

[1]The following facts are undisputed unless otherwise noted.

-1-

31, 1997, Bonilla called Small and spoke with Sean Blakely, one of the owner's sons. (Id. at ¶¶ 11, 12.) During that conversation, Bonilla informed Blakely that her mother was sick and that she would need additional time off to stay with her. (Id. at 14.) Blakely asked Bonilla about the nature of her mother's illness, and she advised him that she did not know. (Id. at ¶ 16.) Blakely told Bonilla that since she was still on vacation, she should call back on January 5, 1998, when she had a better idea of what she was going to do. (Compare Id. at ¶ 18 with Small's 56.1(b)(3)(B) Stmt. ¶ 16.) Bonilla failed to call Blakely back. (Id. at ¶ 19.) Subsequent to the initial conversation, Bonilla's mother was subsequently diagnosed with cancer, which resulted in her having a hysterectomy on January 12, 1998. (Id. at ¶ 9.)

The next time Blakely spoke with Bonilla was when she returned to work on January 18, 1998. (Small's 56.1(b)(3)(B) Stmt. ¶ 17.) Upon her return to work, Blakely asked Bonilla if she had a doctor's note. (Id. at ¶ 3.) She did not. (Id. at ¶ 4.) Because Bonilla did not have a doctor's note, failed to return Blakely's call on January 5, 1998, and had been absent for three consecutive days without calling in violation of the collective bargaining agreement, Bonilla was terminated, with the biggest reason being that Small failed to show up with a doctor's note. (Id. at ¶ 32.)

Upon being terminated, Bonilla did not file a grievance with the union as mandated by the collective bargaining agreement. (Id. ¶ 43.) Instead, she filed the instant action. We have jurisdiction pursuant to 28 U.S.C. § 1331.

## Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of identifying the portions of the record which it believes demonstrate the absence of a genuine issue of material fact and entitle it to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). For cross-motions for summary judgment, each movant must individually fulfill the stringent requirements necessary to obtain summary judgment under Rule 56. See United Trans. Union v. Illinois Cent. R.R., 998 F. Supp. 874, 880 (N.D. Ill. 1998). The court shall evaluate each motion on its merits, resolving factual uncertainties and drawing all reasonable inferences against the movant. See Brownlee v. City of Chicago, 983 F. Supp. 776, 779 (N.D. Ill. 1997). With these principles in mind, the Court evaluates the merits of the motions.

## Discussion

Small's summary judgment motion is based on the following grounds: (1) Bonilla is barred from bringing her FMLA suit in federal court because she failed to arbitrate her claim as mandated under the collective bargaining agreement;[2] or (2) Small's termination of Bonilla was justified because Bonilla was absent from work for three consecutive days without notifying Small.

Bonilla's summary judgment motion is based on the following grounds: (1) there is no issue of material fact as to whether Small violated Bonilla's rights under the FMLA; and (2) assuming

---

[2]Interestingly, Small has alleged that this Court has jurisdiction over this action in its 56.1 statement of material facts, ¶ 23, and in its response to Bonilla's 56.1 statement of material facts, ¶ 3. Nonetheless, because we must sua sponte determine if jurisdiction is proper, we will analyze whether Bonilla's FMLA claim is properly before this Court.

Small has violated Bonilla's rights under the FMLA, it is undisputed that Bonilla is entitled to liquidated damages.

Because Small's first argument is jurisdictional, we will begin by addressing the merits of that argument.

**Was Bonilla required to arbitrate her claim as mandated by the collective bargaining agreement before filing her FMLA suit in federal court?**

Article IX of the collective bargaining agreement outlines the steps an aggrieved employee must undertake. (Small's Mot. Summ. J. Ex. A at 9-10.) "Grievances concerning improper discharge must be presented within five (5) work days." Id. If an informal settlement cannot be met, then the dispute is sent to arbitration. Id. Based on the mandatory language contained in Article IX of the CBA, Small contends that Bonilla was required to arbitrate her claim before filing her FMLA suit in federal court. Not surprisingly, Bonilla disagrees.

Bonilla contends that Pryner v. Tractor Supply Company, 109 F.3d 354 (7th Cir. 1997), cert. denied, 522 U.S. 912 (1997), and Wright v. Universal Maritime Service Corp., 525 U.S. 70 (1998) carry the day for her. In Pryner, the Seventh Circuit held that a "union cannot consent for the employee by signing a collective bargaining agreement that consigns the enforcement of statutory rights to the union-controlled grievance and arbitration machinery created by the agreement." Pryner, 109 F.3d at 363. In other words, the Court held that a plaintiff can bring a federal cause of action regardless of whether the plaintiff arbitrated the claim as mandated by the collective bargaining agreement. In Wright, the Supreme Court held that any collective bargaining agreement requiring arbitration of federal statutory rights must clearly and unmistakably waive the right of a

party to sue under that statute. Wright, 525 U.S. 79-80. Interestingly, after outlining what requirements would be necessary for a waiver, the Supreme Court went on to state that it was reserving ruling on whether such a waiver would even be enforceable. Id. at 82.

Despite these holdings, Small argues that Bonilla cannot assert her FMLA claim. Small has asserted several arguments in support of this position. Small argues that the facts in the instant case are distinguishable from those of Pryner and Wright. First, Bonilla is asserting an FMLA claim, while the plaintiff in Wright was asserting an ADA claim, and the plaintiffs in Pryner were asserting Title VII, ADA, and ADEA claims. Wright, 525 U.S. at 70; Pryner, 109 F.3d at 355. Neither the Seventh Circuit nor the Supreme Court has addressed the specific issue of whether a plaintiff can assert an FMLA claim in federal court despite the plaintiff's failure to arbitrate her claim pursuant to a collective bargaining agreement. However, we find the Courts' holdings and underlying reasoning in Pryner and Wright to be sufficiently broad enough to include FMLA claims.

In finding that plaintiffs could opt to bring suit in federal court, the Seventh Circuit stated the following explanation:

> The essential conflict is between majority and minority rights. The collective bargaining agreement is the symbol and reality of majoritarian conception of workers' rights. An agreement negotiated by the union elected by a majority of the workers in the bargaining unit binds all the members of the unit, whether they are part of the majority or for that matter even members of the union entitled to vote for union leaders–they need not be. The statutory rights at issue in these two cases are rights given to members of minority groups because of concern about the mistreatment of minorities by majorities. We may assume that the union will not engage in actionable discrimination against minority workers. But we may not assume that it will be highly sensitive to their special interests, which are the interests protected by Title VII and the other discrimination statutes, and will seek to vindicate those interests with maximum vigor. The employers' position delivers the enforcement of the rights

> of these minorities into the hands of the majority, and we do not think that this result is consistent with the policy of these statutes or justified by the abstract desirability of allowing unions and employers to cut their own deals.

Id. at 362-63. Based on this explanation, Small argues that because the FMLA protects all people, not just a minority of people, there is no concern as to whether the union will seek to vindicate a plaintiff's rights under the FMLA with "maximum vigor." (Small's Reply at 3.) We disagree. Regardless of which federal statute is at issue, there will always be a "conflict between majority and minority rights" because a collective bargaining agreement is "the symbol and reality of a majoritarian conception of workers' rights." Id. In other words, regardless of what federal statute is in issue, the nature of collective bargaining is such that a majority of workers can vote away a minority of workers' right to bring suit in federal court. Moreover, FMLA claims can be based on discrimination. See 29 U.S.C. § 2615(a)(1) and (2). The Pryner Court also pointed out that forcing a plaintiff to follow the grievance procedures would be inefficient. Id. at 361-62. According to the Court, in order to obtain complete relief, a plaintiff may need to bring as many as three trials: "the suit against the union to force it to grieve and if necessary arbitrate the grievance, the arbitration proceeding, and the resumed district court proceeding if the workers' rights under the collective bargaining agreement are more limited than their statutory rights." Id. The fact that a plaintiff is bringing a claim pursuant to the FMLA as opposed to another federal statute does not change the end result that multiple litigation may be necessary for a plaintiff to obtain complete relief. Therefore, we hold that a union cannot consent for the employee by signing a collective bargaining agreement that consigns the enforcement of FMLA rights to the union controlled grievance and arbitration machinery created by the agreement.

Other courts have reached a similar conclusion. In Smith v. CPC Foodservice, 955 F.Supp. 84 (N.D. Ill. March 5, 1997), Judge Shadur initially held that a plaintiff could be barred from bringing suit in federal court under the FMLA if a collective bargaining agreement mandated arbitration. Fifteen days later, the Seventh Circuit handed down the Pryner decision. Upon reconsideration, Judge Shadur interpreted Pryner to apply to FMLA claims as well as discrimination claims. Smith v. CPC Foodservice, 1997 WL 349993 (N.D. Ill. June 23, 1997). "If the only issue at this point were that of whether a collective bargaining agreement's arbitration provision may preempt an employee's pursuit of his or her [FMLA] rights, the matter would be simple because Pryner has resolved that question." Id. The Second and Fourth Circuits have also reached the conclusion that a plaintiff's right to bring an FMLA suit in federal court cannot be preempted by a mandatory arbitration provision in a collective bargaining agreement. See Rogers v. New York University, 220 F.3d 73, 75 (2nd Cir. 2000), cert. denied, 121 S.Ct. 626 (2000); Brown v. Trans World Airlines, 127 F.3d 337, 341 (4th Cir. 1997).

The second ground upon which Small distinguishes the facts of the instant case from those of Pryner is that, unlike the plaintiffs in Pryner, Bonilla failed to pursue any prearbitration remedies under the collective bargaining agreement. In Pryner, the Seventh Circuit held that "[t]he question whether failure to exhaust the prearbitration grievance procedure would be a bar to suing is independent of the effect of the arbitration clause and was not raised in [defendant's] argument. We express no view on it." Id. at 356. This issue has yet to be addressed by the Seventh Circuit.

We find that Bonilla's failure to pursue her prearbitration remedies under the collective bargaining agreement does not prevent her from bringing this suit in federal court. Bonilla has correctly pointed out that while the Pryner Court did not directly address this issue, they impliedly

did so by allowing Sobierajski, one of the plaintiffs in Pryner, to pursue his claim in federal court. Although Sobierajski began prearbitration procedures, he did not finish them. Id. at 356. It would make little sense to distinguish between Sobierajski and a plaintiff who failed to take any prearbitration steps. Any justification for forcing a party to exhaust prearbitration procedures is undermined if it is acceptable for the party to abandon them and proceed in federal court.

Because we find that the FMLA must be treated like other federal discrimination statutes, Bonilla's right to bring her FMLA claim is also justified under Wright. In Wright, the Supreme Court held that a waiver of the right to sue in federal court must be clear and unmistakable. Wright, 525 U.S. at 81. The Supreme Court found that Clause 15(f) of the collective bargaining agreement did not constitute a clear and mistakable waiver of federal statutory rights. Id. Clause 15(f) states: "this Agreement is intended to cover all matters affecting wages, hours, and other terms and conditions of employment . . . [a]nything not contained in this Agreement shall not be construed as being part of this Agreement. Id. The collective bargaining agreement in the instant case contains similar language. It states: "For the purposes of this Agreement, a grievance is a difference of opinion with respect to the meaning and application of the terms of this Agreement." (Small's Summ. J. Mot. Ex. A at 9.) The difference between Bonilla's collective bargaining agreements and that of Wright's, which Small points out in his brief, is the absence of the language "[a]nything not contained in this Agreement shall not be construed as being part of this Agreement." Contrary to Small's assertion, the absence of this language does not equate to a clear and unmistakable waiver. In fact, the Supreme Court noted that it doubted that the absence of that clause would make the remaining language constitute a clear and unmistakable waiver. Id. at 81. We find the only clear and unmistakable interpretation of the collective bargaining agreement in the instant case is that it

only applies to contractual rights as opposed to independent federal statutory rights. In Wright, the Supreme Court stated:

> The dispute in the present case, however, ultimately concerns not the application or interpretation of any CBA, but the meaning of the federal statute. The cause of action Wright asserts arises not out of contract, but out of the ADA, and is distinct from any right conferred by the collective-bargaining agreement . . . the ultimate question for the arbitrator would not be what the parties have agreed to, but what federal law requires; and that is not a question which should be presumed to be included within the arbitration requirement.

Id. Like Wright, this case deals with Bonilla's FMLA claim, not the "application or interpretation" of the collective bargaining agreement.

Small's response brief heavily relies on Smith v. CPC Foodservice, 955 F.Supp. 84 (N.D. Ill. 1997) and Austin v. Owens-Brockway Glass Container, Inc., 78 F.3d 875 (4th Cir. 1996) for the proposition that Bonilla is not properly before this court. As discussed above, Judge Shadur explained in Small v. CPC Foodservice, 1997 WL 349993 (N.D. Ill. June 23, 1997), that "[i]f the only issue at this point were that of whether a collective bargaining agreement's arbitration provision may preempt an employee's pursuit of his or her [FMLA] rights, the matter would be simple because Pryner has resolved that question." Id. Small's reliance on Austin is also misguided. There is at least one Circuit that has interpreted Wright as impliedly overruling Austin. Bratten v. SSI Services, 185 F.3d 625, 630 (6th Cir. 1999). The reasoning in Bratten is based on the fact that the Fourth Circuit's decision in Wright heavily relied on the Austin opinion. Therefore, since Wright was overruled, Austin was impliedly overruled.

Because we find that Bonilla may assert her FMLA claim despite failure to exhaust her administrative remedies, we now turn to the merits of her motion for summary judgment.

**Is there a genuine issue of material fact as to whether Small violated Bonilla's rights under the FMLA?**

In King v. Preferred Technical Group, 166 F.3d 887, 891 (7th Cir. 1999), the Seventh Circuit explained an employee's basic rights under the FMLA:

> The Act provides eligible employees of a covered employer the right to take unpaid leave for a period of up to twelve work weeks in any twelve-month period for a serious health condition as defined by the Act. After the period of qualified leave expires, the employee is entitled to be reinstated to the former position or an equivalent one with the same benefits and terms of the employment that existed prior to the exercise of the leave. To insure the availability of these guarantees, the FMLA declares it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided.

(internal citations and quotation marks omitted).

In order to prevail on summary judgment, Bonilla must demonstrate that there is no genuine issue of material fact as to the following issues: (1) that she was an eligible employee; (2) that Small is a covered employer under the FMLA; (3) that she was entitled to take the leave; and (4) that the employer interfered with her exercise of those rights. LeGrand v. Village of McCook, 1998 WL 182462 (N.D. Ill. 1998).

The first two requirements are met. In other words, it is undisputed that Bonilla is an eligible employee and that Small is a covered employer under the FMLA. (Small's 56.1(b)(3)(A) Stmt. ¶¶ 26, 27.) Basically, the dispute between the two parties revolves around the third element.[3] More

---

[3] In her motion for summary judgment, Bonilla points out that in our Memorandum Opinion and Order addressing Small's motion to dismiss we stated "clearly, [Defendant] was on notice that Bonilla's mother was sick enough to need care from her daughter and that she could not return until her mother recovered or received some other help." Surely, Bonilla is aware of the different standards applied when assessing a motion to dismiss as opposed to a summary judgment motion. In a motion to dismiss, all well-pleaded allegations in the complaint must be taken as true, with all reasonable inferences drawn in the plaintiff's favor. Sherwin Manor Nursing Ctr., Inc., v.

specifically, the pivotal issue is whether the notice Bonilla gave Small was sufficient to trigger Small's obligation to inquire as to whether FMLA-qualified leave was needed.

The relevant facts are these: On December 31, 1997, Bonilla spoke with Sean Blakely, one of the owner's sons. (Bonilla's 56.1(a)(3) Stmt. ¶ 11.) During that conversation, Bonilla informed Blakely that her mother was sick and that she would need additional time off to stay with her. (Id. at ¶ 14.) Also during their conversation, Blakely made an informal inquiry into what Bonilla's mother's health condition was. (Small's 56.1(b)(3)(A) Stmt. ¶ 14.) Although not altogether clear, it appears from the evidence presented that Bonilla did not know the seriousness of her mother's illness at the time the initial conversation took place. (Id. at ¶¶ 14, 16, 31.) As a result, Blakely did not know how serious the illness was. (Id. at ¶ 15.) Therefore, Blakely instructing Bonilla to call him collect on January 5, 1998, when she knew what she was going to do and that they would handle the matter from there. (Id. at ¶¶ 14, 16, 31.) The next time Blakely heard from Bonilla was when she showed up for work on January 18 or 19, 1998. (Id. at 17.)

"When the approximate time of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). "[A]n employee giving notice of the need for unpaid FMLA leave does not need to expressly assert rights under the Act or even mention the FMLA to meet his or her obligation to provide notice, though the employee would need to state a qualifying reason [serious health condition] for the needed leave." 29 C.F.R. 825.208(a)(2). "The employer will be expected to obtain any additional required information through informal means.

---

McCauliffe, 37 F.3d 1216, 1219 (7th Cir. 1994). To the contrary, in a summary judgment motion, a court must resolve factual uncertainties and draw all reasonable inferences against the movant. Brownlee, 983 F. Supp. at 779.

The employee or spokesperson will be expected to provide more information when it can readily be accomplished as a practical matter, taking into consideration the exigencies of the situation." 29 C.F.R. § 825.303(b). Once the employee provides sufficient information to put the employer on notice that leave is needed, the burden then shifts to the employer to obtain further information if needed. Gay v. Gilman Paper Co., 125 F.3d 1432, 1436 (11th Cir. 1997).

In the instant case, it is clear that Bonilla could not have anticipated her need for leave. According to Bonilla, it was not until she arrived in Honduras that her mother became ill. (Bonilla's 56.1(a)(3) Stmt. ¶ 7.) Once Bonilla became aware that her mother was ill, she called Small. (Id. at 11.) However, while it appears Bonilla called her employer as soon as the mother's unforeseeable illness came to light, that does not answer the question of whether the information she provided Small was sufficient to trigger Small's duties under the FMLA.

Whether Bonilla gave sufficient notice to trigger Small's duties under the FMLA is a question of fact. Price, 117 F.3d at 1026. As a result, there must be no genuine issue of material fact that Bonilla gave the required notice in order for us to grant her motion. Taking into account the applicable law, there are genuine issues of material fact precluding the entry of summary judgment in favor of Bonilla. First, there is a question as to whether Bonilla gave Small a "qualifying reason for the needed leave." 29 C.F.R. 825.208(a)(2). According to Stoops v. One Call Communications, Inc., 141 F.3d 309, 312 (7th Cir. 1998), the employee must provide the employer "with enough information to put the employer on notice that FMLA-qualifying leave is needed." Bonilla concedes that Blakely did not know how serious her mother's illness was. (Bonilla's 56.1(a)(3)(B) Stmt. ¶ 15.) In fact, because neither Bonilla nor Small knew of the seriousness of the mother's illness, the two of them planned to have a subsequent phone conversation to discuss what to do. (Id. at ¶ 14.)

As a result, a reasonable jury could conclude that Small was unaware of the mother's alleged serious health condition.

It is also disputed whether Bonilla made reasonable efforts after the initial phone conversation to inform Small that there was a qualifying need for leave. Although Blakely and Bonilla agreed to talk again on January 5, 1998, Small did not hear from Bonilla until she returned from work on January 18, 1998. (Id. at ¶ 16, 17.) Bonilla's explanation is that she would have to travel thirty miles each way to get to a phone and that she was the only person able to take care of her mother. (Bonilla's 56.1(a)(3) Stmt. ¶¶ 15,20.) However, while Bonilla disputes that her father and sister who lived with the mother did not take care of the mother while Bonilla was in Honduras, she admits that they took care of the mother after Bonilla left. (Bonilla's 56.1(a)(3)(B) Stmt. ¶¶ 49, 50.) As a result, a reasonable jury could conclude that Bonilla's father and sister could have cared for the mother at least while Bonilla went to make a phone call, if not all along.

Based on the evidence presented, a reasonable jury could conclude that Bonilla failed to give sufficient information to Small such that Small would be on notice that her situation qualified for FMLA leave. In other words, the burden may never have shifted to Small to request further information, such as a doctor's note.[4] Therefore, Bonilla's motion for partial summary judgment is denied. Because there is an issue of fact as to whether the FMLA applies, we must also deny Small's second argument for summary judgment, i.e., that Bonilla's termination was justified under the collective bargaining agreement.

---

[4] Bonilla's summary judgment motion also addresses Small's alleged improper request for a doctor's note. We need not address this issue because we find there is a factual dispute as to whether the FMLA applies. If the FMLA does not apply, then Small had no duties to comply with its requirements.

## Conclusion

For the reasons stated herein, we find Bonilla's FMLA claim is properly before this Court. However, there are factual issues in dispute that prevent us from entering judgment in her favor. As a result, the parties' cross motions for summary judgment are denied.

**ENTER:**

_____
**UNITED STATES SENIOR DISTRICT JUDGE**

DATED: 5/30/01